JAMES B. KEESEY, as Administrator, etc., of LILLIAN B. KEESEY, Deceased, Respondent, v. MARION O'REILLY, Appellant.

First Department, February 1, 1918.

**Landlord and tenant — negligence — liability of owner for death of sublessee of furnished rooms killed by falling of chimney while hanging clothes on roof — licensee — evidence insufficient to establish easement over roof as appurtenance to lease.**

In an action by a subtenant of two furnished rooms on the top floor of defendant's building, to recover for the death of his wife who, while upon the roof to hang out some washing was killed by the falling upon her of a part of the chimney, there was no evidence in the lease executed by the defendant, or in any of the subleases, that the roof or any part of the premises was reserved or set aside for use of tenants for drying clothes. It appeared that the only means of access to the roof was by climbing an ordinary fire ladder, pushing off a scuttle and climbing through the opening, and that the roof was of tin without boards or slats for people to walk on, and contained no provisions for fastening clothes lines.

*Held*, on all the evidence, that the deceased was a mere licensee and that a judgment in favor of the plaintiff must be reversed and the complaint dismissed.

The plaintiff, as a subtenant of the rooms, had no easement over the roof as an appurtenance to his lease and the mere fact that his immediate landlord in violation of the principal lease, even with the acquiescence of the owner, permitted housekeeping in the rooms did not create an easement over the roof.

APPEAL by the defendant, Marion O'Reilly, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 10th day of January, 1917, upon the verdict of a jury for $4,500, and also from an order entered in said clerk's office on the 17th day of January, 1917, denying defendant's motion for a new trial made upon the minutes.

*Frederick Mellor*, for the appellant.

*Herbert C. Smyth* of counsel [*Roderic Wellman* with him on the brief; *Joseph Kohler*, attorney], for the respondent.

SHEARN, J.:

In May, 1915, defendant was the owner of a building Nos. 336–338 Lenox avenue and had owned it for about

twelve years. She had bought it as two private houses, and about eight years ago made alterations, throwing the two houses into one, taking off the stoops, placing four stores in the basement and first floor, and making the three floors above suitable for the purpose of renting out furnished rooms. Those three upper floors were rented to one Charles H. Haas by a written lease covering the years 1912 to 1914 and extended by indorsement to cover the year 1915. This lease provided that the three upper floors of the combined buildings were "to be used for sleeping apartments and not for housekeeping in any form whatever." The lessee Haas rented out parts of the leased premises as furnished rooms to various people. Plaintiff, his wife and child occupied two rooms on the top floor, hired by the week. They had lived there a year, when, on May 8, 1915, plaintiff's wife went up on the roof to hang out some washing and was killed by the falling upon her of a part of the chimney. It is claimed by the plaintiff, who has recovered a judgment upon the verdict of a jury, that the plaintiff's wife was upon the roof on the invitation of the defendant, whereas the defendant's contention is that she was there merely as a licensee.

Although the lease prohibited the use of the apartments for housekeeping, such use by plaintiff's family was permitted by Haas. Such use by several other tenants was also permitted by the lessee. Indeed, it was shown that for a considerable period of time the lessee set apart a room on a lower floor for use by the subtenants as a laundry, with hanging lines outside the window. For some three months prior to the accident this room was only partially available because occupied by another subtenant as a kitchen. No measures were actively taken by the owner to compel the lessee to observe the prohibition in the lease against the use of the rooms for housekeeping purposes, and the evidence warranted a finding that the owner tacitly acquiesced in such use as was proved. There is no evidence whatever that in the lease to Haas or in any of the subleases the roof or any other part of the premises was reserved or set aside for the common use of the tenants for drying clothes or that such facilities were in any manner appurtenant to the lease or to the subleases. Late in the course of the trial, on rebuttal,

plaintiff brought out that the defendant's alleged janitor, when asked by plaintiff a week after plaintiff had hired his two rooms, "Where do the people do their washing?" said, "The majority of them do it in their rooms; others washed in the washroom." Plaintiff testified, "I asked him where they hung them; he said, 'You, living on the top floor, it will be closer for you to hang on the roof.'" Assuming that, in the state of the proof, this statement of the janitor was binding upon the defendant, it constituted at most a bare permission to make such a use of the roof. Even if it tended to show an invitation, as distinguished from a mere permission, any such inference was completely overborne by the other evidence in the case.

The only means of access to the roof was by climbing an ordinary iron fire ladder, pushing off a scuttle and climbing through the opening to the roof. There was one such opening in each house. The roof was an ordinary tin roof. No boards or slats were provided for people to walk on. There were no posts on the roof to support lines; there were no pegs, staples or other provision for fastening lines; there was nothing there except the roof itself, skylights, a scuttle and the chimneys, except that, as the evidence warranted the jury in finding, during the period of plaintiff's subtenancy there was a wire and a hemp rope stretched between the two chimneys, which wire and rope were used by the plaintiff's wife and at times by other subtenants to hang washing upon for the purpose of drying it. No evidence was introduced to show that the defendant or the lessee Haas had anything to do with putting up the wire or the rope, but there was testimony adduced by the defendant, which, if credited, tended to show that the wire had been put up by one of the subtenants and that the rope was put up and taken down from time to time by some one of the subtenants as occasion required. These facts fall far short of warranting a finding that the defendant invited the use of the roof for the purpose of hanging out and drying clothes. A different situation would be presented if it appeared that the defendant had prepared the roof for such use; if, for example, the tin roof, which would readily be made to leak if regularly tramped upon by the numerous subtenants, had been covered with boards

or slats, and if hanging posts or similar facilities intended to carry drying lines had been provided. It would also have been a fact of some significance if the defendant had provided a stairway to the roof and a door opening from the stairway to the roof, instead of an iron ladder and scuttle of the kind ordinarily designed for emergency access to the roof and clearly not suited or intended for women carrying baskets of wet clothes. Assuming that the jury would have been warranted in finding that the defendant knew or ought to have known that some of the subtenants were using the roof for drying clothes, the only legal inference properly to be drawn from these facts, in the light of all of the other facts in the case above referred to, is that the defendant acquiesced in and permitted such use of the roof, thus imposing upon the defendant a duty to exercise only such care as is owing to a bare licensee. The plaintiff as a subtenant by the week of two furnished rooms had no easement over this roof as an appurtenance to his lease, and the mere fact that his immediate landlord, in violation of the principal lease, even with the acquiescence of the owner, permitted housekeeping in these furnished rooms, did not create an easement over the roof. The presence of the plaintiff on the roof was not expected in the enjoyment of any appurtenance shown by the circumstances to be attached to the lease, and was, therefore, not to the mutual interest of the parties. Under the rule stated in *Heskell* v. *Auburn L., H. & P. Co.* (209 N. Y. 86) and *Vaughan* v. *Transit Development Co.* (222 id. 79) the circumstances constituted the deceased a mere licensee.

It follows that the judgment and order must be reversed, and, as it appears that a new trial would not change the essential facts upon which this decision is based, the complaint is dismissed, with costs.

CLARKE, P. J., DOWLING, SMITH and PAGE, JJ., concurred.

Judgment and order reversed, with costs, and complaint dismissed, with costs.